# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1881.

## A. P. MATHEWS *v.* THE STATE.

1. ROBBERY — EVIDENCE.—Proof that the money of which the party injured was deprived was forty dollars and of the value of forty dollars, will not sustain a conviction under an indictment which described the money as "forty dollars in current paper money of the United States, to wit: two ten dollar bills of the value of ten dollars each, and four five dollar bills of the value of five dollars each."

2. VERDICT.— EVIDENCE that the property appropriated was of the value of fifteen dollars will not support a verdict finding the defendant guilty of swindling to an amount exceeding twenty-five dollars, and therefore of felony.

3. PRACTICE.— The Code of Criminal Procedure provides that where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information.

4. THEFT is among the offenses consisting of different degrees, and includes swindling, embezzlement, and all unlawful acquisitions of personal property punishable by the Penal Code.

5. PROOF.— In all cases where the verdict is for a minor degree of the offense charged in the indictment, the proof should meet the statutory definition of the minor degree.

6. SWINDLING is defined to be the acquisition of personal or movable property, money, or an instrument of writing conveying or securing a valuable right, by means of some false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the rights of the party justly entitled to the same.

7. SAME.— But in order to constitute the offense some false representation as to existing facts or past events must have been made. Mere

false promises or false professions of intention, although acted upon, are not sufficient.

8. EVIDENCE.— See evidence *held* insufficient to support a verdict for swindling, and *held* also not to warrant a charge of the court on that offense.

9. INDICTMENT — DUPLICITY.— See the opinion for an indictment of two counts, *held* to charge offenses of a character so similar as not to be subject to the objection of duplicity.

APPEAL from the District Court of Tarrant.    Tried below before the Hon. A. J. Hood.

The indictment in one count charged the robbery, and in another the theft of a watch of the value of $15, and of $40 in money.    The conviction was for swindling to amount exceeding $25, and a four years' term in the penitentiary was the punishment assessed.

The only witness in the case was R. W. Cashion, the party alleged to have been despoiled.    He testified that he and his family arrived in Fort Worth from Lincoln county, Tennessee, on the —— day of ——.    The next morning he started out in town in search of Mr. ——.    He was an entire stranger in the country, and inquired of a man whom he has since known as "Castor Oil Bill" for the party of whom he was in search.    "Castor Oil Bill" asked the witness several questions, and among other things the witness told him that he was just from Tennessee, and was a stranger in the city.    "Castor Oil Bill" remarked that he was going the direction witness desired to go, and would show or tell him where he could find the party he was looking for, but first to step into a saloon near which they were and take a drink.    After some persuasion the witness went in, the two took a drink, and then started to where the party could be found that witness was looking for.    "Castor Oil Bill" took the witness up a street and around a corner or two, the names of which streets the witness did not know.    *En route*

Bill said to witness that he had to stop a minute at the "Land Office," and then they would proceed. After walking some distance Bill stopped in front of a back stairway which led up to the door of a large up-story room, which he told witness was the "Land Office," and asked him to walk up with him a minute, which the witness did, believing it to be the Land Office. When they entered the witness saw A. P. Mathews and another man sitting at a table, playing cards, to whom Bill spoke in a friendly and intimate manner. Very soon Bill proposed that all the parties present play a game for drinks. The witness told them that he could not play cards, had never played them in his life, and knew nothing about playing. They all insisted, and Bill said that if he, Bill, and the witness lost, that he would pay for the drinks, and witness should lose nothing. The witness tried to be excused, but they insisted. About this time the witness went to the door through which he had entered, and tried to get out, but found it locked. The three men still insisted on his playing, and finally, not knowing what to do, and finding himself locked in the room with three men he did not know, in a city where he was an entire and total stranger, he sat down and they commenced playing, the witness scarce knowing one card from another. After the cards had been dealt around a few times, one of the men said he "had a d—d good poker hand," and the others said they had pretty good poker hands, and asked the witness what kind of a poker hand he had. The witness truthfully responded that he did not know. The three men commenced to bet or appeared to bet on their hands as poker hands, when Castor Oil Bill came around, looked at the witness' hand, and said: "Why d—n it, your hand is the best of any, and is bound to win if you will bet." The witness responded that he had never bet a cent in his life on cards, and could not. They insisted; the witness refused. They told witness "d—n it, you shall

bet." The witness told them he had nothing to bet. They said you have a watch, and one of them pulled the watch, a silver one, worth about fifteen dollars, from witness' pocket, and put it on the table, telling witness he must bet as he had the best hand. The others then put down more money and told the witness he must put down money too. The witness told them he had none to bet — that he had but forty dollars in the world, a wife and small children, and was in a strange town. They insisted, and the witness, not knowing what to do, pulled out the money and Castor Oil Bill put it on the table, all saying the witness was bound to win. They decided that the witness had lost, and the witness begged them not to take what he had, but they said that the witness had bet and lost, and that the watch and money belonged to the defendant, A. P. Mathews, whereupon Mathews gathered up the money and watch, and placed all in his pocket. After a great deal of persuasion Mathews, the defendant, returned the witness five dollars, and they opened the door and let the witness out. This occurred in Fort Worth, Tarrant county, Texas.

*B. G. Johnson*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WINKLER, J. The indictment upon which the appellant was tried and convicted contains two counts. The first count charges: "That one A. P. Mathews, in the county of Tarrant and State aforesaid, on the 13th day of December, in the year of our Lord one thousand eight hundred and eighty, with force and arms did make an assault upon one R. W. Cashion, and did then and there unlawfully, by means of said assault, and by violence, and by putting said R. W. Cashion in fear of life and of great bodily injury, take from the possession of said Cashion

a certain watch and chain then and there belonging to said Cashion, of the value of fifteen dollars, and forty dollars in current paper money of the United States, then and there belonging to said Cashion, and described as follows, to wit: Two ten dollar bills of the value of ten dollars each, and four five dollar bills of the value of five dollars each, which money the grand jurors are unable more fully to describe, with intent then and there on the part of him the said Mathews to appropriate to his, said Mathews', use." The second count charges the defendant with the theft of the same property and money set out in the first count, and it is described in the second count just as it is in the first.

On the trial below the jury returned the following verdict: "We the jury find the defendant guilty of swindling to an amount exceeding twenty-five dollars, and assess his punishment at confinement in the State penitentiary for a period of four years." Judgment was rendered in conformity to the verdict. The defendant's motion for a new trial was overruled, and this appeal is prosecuted. The first error assigned raises the question whether the testimony sustains the descriptive averment in the indictment as to the money charged to have been taken by the defendant. It does not appear that any attempt was made on the trial to identify the money taken with that described in the indictment, or that the attention of the solitary witness who testified in the case was called to the money described in the indictment. He seems to speak, as one of the incidents of the transaction, of having but forty dollars, and of pulling it out, and of his companion having bet it, and that it was decided he had lost and the defendant had won, and says it was of the value of forty dollars, that the defendant on persuasion gave him back five dollars, and that the money the defendant kept was of the value of thirty-five dollars; but we fail to see any attempt whatever to identify the money by proof with

that described in the indictment, further than inferentially that it belonged to the witness.  Because of this defect in the proof the money alleged to have been taken cannot enter into or form any part of the basis of the verdict and judgment.  No question is raised as to the proof of identity of the watch, but its value being shown to be but fifteen dollars, will not support the verdict; and on this account we are of opinion a new trial should have been granted.

The second error assigned raises a question of the sufficiency of the testimony to support a verdict of guilty of swindling.  It is true that, agreeably to the Code of Procedure, it is declared that when a prosecution is for an offense consisting of different degrees the jury may find the defendant not guilty of the higher degree *(naming it)*, but guilty of any degree inferior to that charged in the indictment or information.  Code Crim. Proc. art. 713. And among the enumerated offenses which include different degrees we find the following: "Theft, which includes swindling, embezzlement, and all unlawful acquisitions of personal property punishable by the Penal Code."  Code Crim. Proc. art. 714, subdivision 6.  From this provision it would seem that agreeably to the intention of the law-makers swindling is an inferior degree of the crime of theft, and that an indictment for theft would support a conviction for swindling.  In all cases, however, the proof must sustain the verdict or it ought not to stand.  In all cases where the verdict is for a minor degree of a major offense charged in the indictment, the proof should meet the definition of the minor degree when it is specifically defined by law.

For example, an indictment for murder would support a conviction for manslaughter, on proof of manslaughter, and so an indictment for maiming would support a conviction for an assault and battery, on proper proof of that degree of the offense, which is included in the charge of

maiming. In all these cases the question is, do the proofs show the commission of the degree of the offense of which the party has been found guilty by the jury? And in the present case the question presented for our determination. is, do the proofs sustain the verdict of guilty of swindling, as that specific offense is defined by the Penal Code? This particular offense is well defined in the Penal Code, art. 790, and its punishment is prescribed in art. 796. The punishment was changed by the Revised Code from what it was formerly. (See the former law, Pasch. Dig. art. 2432.) The definition of the offense, however, has undergone no change by the revision; so that former adjudications apply to the law as it now is. By the statute swindling is defined to be the acquisition of personal or movable property, money, or instrument of writing conveying or securing a valuable right, by means of some false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the rights of the party justly entitled to the same. Penal Code, art. 790. This article was construed in *Johnson* v. *State*, 41 Texas, 65, to require that some false representations as to existing facts or past events should be made, and that mere false promises or false professions of intention, although acted upon, are not sufficient to constitute the offense.

The difficulty in the way of the present conviction is that the testimony does not show that the defendant obtained the money or property of the prosecuting witness by means of any false or deceitful pretense or device, or fraudulent representation, which is requisite to constitute the offense of swindling. To our minds the evidence more nearly approaches robbery or theft than swindling. The testimony does not support the verdict, nor in our opinion did it warrant the charge of the court on swindling.

It is urged in argument for the appellant that the indictment is vicious, because it charges robbery in one count and theft in another, and that the prosecution was not required to elect as to which count the State would try upon. The character of offenses charged in the two counts is so similar that the objection for duplicity is not well taken, but aside from this we are of opinion that the record discloses a virtual election to try on the count for theft, and that the defendant had the benefit of an election, and hence has no ground to complain of the indictment. The indictment may comprise as many counts as are necessary to meet the contingencies of the evidence, without necessitating an election. *Dill* v. *State,* 1 Texas Ct. App. 278; *Weathersby* v. *State,* id. 643; *Dalton* v. *State,* 4 Texas Ct. App. 333; *Irving* v. *State,* 8 Texas Ct. App. 46.

Because the testimony does not sustain the descriptive averment in the indictment as to the money charged to have been taken, and because the value of the other property taken is not sufficient to support a verdict of felony, and because the testimony did not warrant either the charge of the court on the subject of swindling or the verdict finding the defendant guilty of swindling, the judgment will be reversed and the case remanded.

*Reversed and remanded.*